AKIAK NATIVE COMMUNITY; Native Village of Atmautluak; Kasigluk Traditional Council; Organized Village of Kwethluk; Native Village of Napakiak; Napaskiak Tribal Council; Native Village of Nunapitchuk; The Association of Village Council Presidents; Akiachak Native Community, Plaintiffs–Appellants,

live.

v.

**UNITED STATES POSTAL SERVICE,**
**Defendant–Appellee.**

No. 98–35466.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 4, 1999

Filed May 25, 2000

Robert W. Randall, Trustees for Alaska, Anchorage, Alaska, for the plaintiffs-appellants.

Joan M. Pepin, United States Department of Justice, Washington, D.C., for the defendant-appellee.

Before: CANBY and GRABER, Circuit Judges, and GEORGE,[1] District Judge.

CANBY, Circuit Judge:

Plaintiffs, several Alaska Native communities, appeal from the district court's summary judgment in favor of defendant, the United States Postal Service. Plaintiffs sought to enjoin the Postal Service's Hovercraft Demonstration Project ("the Project"), an experimental program that delivers non-priority mail by surface hovercraft instead of by fixed-wing aircraft to eight remote Alaska Native villages on the Kuskokwim River and two of its tributaries. Plaintiffs allege that the project violates the Coastal Zone Management Act (CZMA), 16 U.S.C. § 1456, and the National Environmental Policy Act (NEPA), 42 U.S.C. § 4332.

Plaintiffs contend that the Project violates CZMA because it is inconsistent with Alaska's coastal management program. Plaintiffs argue that the Project violates NEPA because the Postal Service's final Environmental Assessment contains errors, omissions, and failures of analysis that invalidate its "Finding of No Significant Impact."

Because we find no infirmities under either CZMA or NEPA, we affirm the district court's judgment.

1. The Honorable Lloyd D. George, Senior United States District Judge for the District of

**Background and Procedural History**

In response to an unsolicited suggestion of a cheaper means of delivering parcel mail to specified locations, the Postal Service proposed to conduct a two-year experimental program to determine the feasibility of using hovercraft for delivery of certain types of parcel mail to eight remote Alaskan villages-the Hovercraft Demonstration Project. Although hovercraft are capable of moving over land, the Postal Service's plan was to use them only for travel on rivers. In 1995, the Postal Service issued a notice of intent to prepare a study of the environmental effects of conducting the Project. The initial scoping process identified several areas of concern, including the Project's noise and potential effects on fish and wildlife, endangered species, subsistence activities, and commercial fishing.

After consulting with the U.S. Department of Transportation, the Postal Service prepared a draft Environmental Assessment in which it concluded that the Project would not have a significant impact on the environment. The Postal Service circulated the draft Environmental Assessment for public comment in April 1997. The United States Fish and Wildlife Service and the Alaska Department of Fish and Game disagreed with the Environmental Assessment's conclusion that the impacts on fish, wildlife, and subsistence activities would be insignificant. Despite these objections, the Postal Service released the final Environmental Assessment and a Finding of No Significant Impact in July 1997. The Project commenced on July 14, 1997.

Plaintiffs filed this action in the United States District Court for the District of Alaska, alleging violations of NEPA and CZMA. The district court granted summary judgment in favor of the Postal Service, and plaintiffs appealed.

Nevada, sitting by designation.

### Standard of Review

We review de novo a grant of summary judgment. *Margolis v. Ryan,* 140 F.3d 850, 852 (9th Cir.1998). Judicial review of actions under CZMA and NEPA ordinarily is governed by the Administrative Procedure Act (APA), 5 U.S.C. §§ 551–559, 701–706. The Postal Service presents a special case, however. The Postal Reorganization Act provides that, except to the extent that the Postal Service has adopted such laws as rules or regulations, "no Federal law dealing with public or Federal contracts, property, works, officers, employees, budgets, or funds, including the provisions of chapters 5 and 7 of title 5 [of the APA], shall apply to the exercise of the powers of the Postal Service." 39 U.S.C. § 410(a). There is no longer any dispute that the Postal Service has adopted the relevant provisions of CZMA and NEPA, and that the standard of review of the APA applies. We therefore may set aside the Postal Service's action only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see also Anaheim Memorial Hosp. v. Shalala,* 130 F.3d 845, 849 (9th Cir.1997). The "arbitrary or capricious" standard is appropriate for resolutions of factual disputes implicating substantial agency expertise. *Marsh v. Oregon Natural Resources Council,* 490 U.S. 360, 376–77, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989). Purely legal questions are reviewed de novo. *Wagner v. National Transp. Safety Bd.,* 86 F.3d 928, 930 (9th Cir.1996).

### I. Coastal Zone Management Act (CZMA)

Plaintiffs contend that the Project violated CZMA. CZMA requires that development projects in a coastal zone must, "to the maximum extent practicable," be consistent with approved state management programs. 16 U.S.C. § 1456(c)(2). Federal agencies are required to provide state agencies with a consistency determination at least ninety days before final approval of a project unless both the federal agency and the state agency agree to a different schedule. 15 C.F.R. § 930.34(b). Once the consistency determination is submitted to the state, the "State agency shall inform the Federal agency of its agreement or disagreement with the Federal agency's consistency determination." 15 C.F.R. § 930.41(a). Under Alaska law, coastal zone activity must be "consistent with the applicable district program and [state] standards." Alaska Admin. Code tit. 6, § 80.010(b). The applicable district management program for the Project is the Cenaliuriit Coastal Management Plan, and the relevant state program is the Alaska Coastal Management Program. *See* Alaska Stat. §§ 46.40.010, 46.40.030.

Following the Postal Service's consistency determination, the Alaska Division of Governmental Coordination issued a Final Consistency Response concluding that, subject to four conditions, the Project is "consistent to the maximum extent practicable" with both the Alaska and the Cenaliuriit Plans.

Plaintiffs contend that, even with the four conditions, the Project violates the habitat and subsistence standards of the Alaska and Cenaliuriit Plans, thus violating CZMA's consistency provisions. But the Alaska Division of Governmental Coordination and the Postal Service agreed that the Project was consistent with the Plans, and we will not set aside that agreed conclusion without a "compelling reason." *Save Lake Wash. v. Frank,* 641 F.2d 1330, 1339 (9th Cir.1981). Plaintiffs contend that there are at least three such "compelling reasons": (1) the Postal Service took action without waiting ninety days after the consistency determination, as required by regulation; (2) the Postal Service failed to comply with the conditions outlined in Alaska's Consistency Determination; and (3) the Postal Service commenced the Project before Alaska actually issued its Final Consistency Response. We find none of these reasons compelling.

## A. The Ninety–Day Requirement

■ There is no question that the Postal Service initiated the Project without waiting ninety days after it sent its consistency determination to the State. But the regulations require a ninety-day interval "unless both the Federal agency and the State agency agree to an alternative notification schedule." 15 C.F.R. § 930.34(b); *see also* 15 C.F.R. § 930.41(c). Here, the administrative record is clear that the two agencies had agreed on a different time interval, but it does not specify what the interval is. The Postal Service asserts that the agreement was on a sixty-day interval, and it provided the district court with extra-record evidence supporting its contention-the transcript of a hearing of the Alaska Coastal Policy Council. The district court properly considered this evidence because it is explanatory "background information" that does not bear on the substantive merits of the agency's decision. *Asarco, Inc. v. United States Environmental Protection Agency*, 616 F.2d 1153, 1159–60 (9th Cir.1980); *see also Thompson v. United States Dep't of Labor*, 885 F.2d 551, 555 (9th Cir.1989). In light of the agreement between the agencies on a different period, the lack of a ninety-day interval is far from a compelling reason to interfere with the consistency agreement.

## B. The Postal Service's Failure to Comply with Alaska's Conditions

Contrary to the contention of Plaintiffs, the Postal Service did submit a Draft Monitoring Plan to the State before initiating the Project, as required by one of the conditions insisted upon by the Alaska Division of Governmental Coordination. The Draft Monitoring Plan was submitted to the Alaska agency on July 11, 1997–three days prior to the commencement of the Project.[2]

2. For the reasons stated in our preceding paragraph, we also reject Plaintiffs' suggestion that the evidence of the Draft's submis-

## C. Commencement of the Project Before the State Issued its Final Consistency Response

■ Plaintiffs next argue that the Postal Service did not, in fact, rely on Alaska's consistency determination because the Project commenced before Alaska issued its *final* consistency determination. The Postal Service did, however, receive Alaska's *preliminary* consistency determination before the Project began, and that preliminary determination found that the Project was consistent with applicable state law. Alaska's final consistency determination reached the same conclusion, albeit fifty-three days after the Project had commenced. In short, the State and the Postal Service agreed that the Project is consistent with Alaska's coastal management laws. Plaintiffs challenge to the timing of the final agreement does not present a compelling reason for upsetting it.

Because Plaintiffs have failed to show any compelling reason for overturning the consistency agreement reached between the Postal Service and Alaska, we reject their arguments that the Postal Service violated the CZMA.

## II. National Environmental Policy Act (NEPA)

The Postal Service prepared an Environmental Assessment to determine whether the Project's impacts were likely to be "significant." 40 C.F.R. §§ 1501.4, 1508.9(a). The Environmental Assessment was required to discuss the need for the Project, the alternatives to the Project, and its environmental impacts. *See* 40 C.F.R. § 1508.9(b). The Postal Service's Environmental Assessment concluded with a "Finding of No Significant Impact" on the environment, which, if it stands, relieves the Postal Service of the need to prepare a far more extensive Environmental Impact Statement before launching its Project. *See* 40 C.F.R. 1501.4(e).

sion is inadmissible as being outside the administrative record.

Plaintiffs challenge the validity of the Postal Service's Environmental Assessment on the grounds that it: (1) fails to analyze adequately the environmental impacts of the project; (2) fails to explain adequately mitigation measures on which the Postal Service relies; and (3) fails to consider an acceptable range of alternatives, including the no-action alternative. We address each point.

## A. The Postal Service's Analysis of Environmental Impacts

■■ Plaintiffs argue that the Environmental Assessment's substantive conclusions are flawed. We note, first, that the scope of our review for such a claim is quite narrow. We ordinarily "must defer to the informed discretion of the responsible federal agencies." *Marsh*, 490 U.S. at 377, 109 S.Ct. 1851 (internal quotation marks omitted). As the Postal Service points out, deference is accorded agency environmental determinations not because the agency possesses substantive expertise, but because the agency's decision-making process is accorded a "presumption of regularity." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).[3] Although not immune from judicial scrutiny, agency decisions are subjected to the narrow "arbitrary and capricious" standard. Accordingly, we consider only whether the Postal Service's decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. *See id.* at 416, 91 S.Ct. 814.

Mindful of the limited scope of our review, we conclude that the Environmental Assessment is sufficiently well-documented and explained. To succeed in their challenge, Plaintiffs must demonstrate that the Postal Service failed to "articulate a rational connection between the facts found and the conclusions made." *Oregon Natural Resources Council v. Lowe*, 109 F.3d 521, 526 (9th Cir.1997). Plaintiffs suggest that the Environmental Assessment's analysis does not support the finding of no impact because: (1) the Postal Service had insufficient information to conclude that the project's impact would be insignificant; and (2) the U.S. Fish and Wildlife Service, an agency with expertise in environmental issues, suggested that the Environmental Assessment's conclusions were faulty.

With respect to the first argument, plaintiffs point to many instances in which the Environmental Assessment states that various impacts "could" or "may" result from the project. On this basis, plaintiffs assert that the Environmental Assessment implicitly admits that insufficient data had been gathered on the likely impacts of the project. This argument is unpersuasive when all of the findings of the Environmental Assessment are considered as a whole. Although the Environmental Assessment does include some discussion of *possible* impacts, it does not conclude that there were substantial questions whether those impacts would occur and be significant. *See Idaho Sporting Congress v. Thomas*, 137 F.3d 1146, 1149 (9th Cir. 1998).

■ With respect to the second argument, plaintiffs point to the Fish and Wildlife Service's comments on the draft Environmental Assessment. The Postal Service is not required, however, to defer to the Fish and Wildlife Service's conclusions. NEPA requires only that the responsible agency "consider[ ] these agencies' initial concerns, address[ ] them, and 'explain[ ] why it found them unpersuasive.' " *California Trout v. Schaefer*, 58 F.3d 469, 475 (9th Cir.1995) (quoting *Roanoke River Basin Ass'n v. Hudson*, 940 F.2d 58, 64 (4th Cir.1991)). The Postal

---

**3.** Plaintiffs cite *Nealon v. California Stevedore & Ballast Co.*, 996 F.2d 966 (9th Cir.1993), for the proposition that agency deference stems from judicial recognition of substantial agency expertise. *Id.* at 969 (citing *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844–45, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). *Nealon*, however, concerned judicial deference to an agency's interpretation of regulations pursuant to *Chevron*, not to an agency's determination of fact.

Service has clearly satisfied this requirement.

In addition, the disagreement between the two agencies is not as great as Plaintiffs would have us believe. The Fish and Wildlife Service expressed concern that the Project might provide a long-term disturbance of roosting waterfowl along the Kuskokwim River, significantly affecting nesting and migration patterns. Because of this concern, the Fish and Wildlife Service recommended further study, including baseline studies, before issuance of the final Environmental Assessment. The Environmental Assessment carefully analyzes this issue and concludes that a *short-term* disturbance of roosting is the *probable* impact of the Project. The Fish and Wildlife Service itself concluded that "a short term disturbance of roosting of birds would probably not be significant." It also conceded that comparison with control points outside the Project area would accomplish the purpose that would be served by baseline studies. Thus the Postal Service mustered sufficient record support for its finding of no significant environmental impact.

**B. Mitigation Measures**

█ Plaintiffs also complain that the Environmental Assessment does not outline specific, obligatory mitigation measures. The Supreme Court has made it clear, however, that "NEPA does not require a fully developed plan detailing what steps *will* be taken to mitigate adverse environmental impacts." *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 359, 109 S.Ct. 1835, 104 L.Ed.2d 351 (1989) (emphasis in original). The generalized, non-self-executing mitigation strategies outlined in the Environmental Assessment are, therefore, not unreasonable in light of the fact that the mitigation plans are designed to ameliorate *unexpected* environmental impacts.

█ We must keep in mind that NEPA does not *require* that Environmental Assessments include a discussion of mitigation strategies. Although NEPA regulations do require a discussion of the

"[m]eans to mitigate adverse environmental impacts," 40 C.F.R. § 1502.16(h), this provision governs the preparation of an *Environmental Impact Statement*, not an Environmental Assessment. This distinction is critical. Federal agencies must prepare an Environmental Impact Statement when there are " 'substantial questions whether a project may have a significant effect' on the environment." *Blue Mountains Biodiversity Project v. Blackwood*, 161 F.3d 1208, 1212 (9th Cir.1998) (quoting *Idaho Sporting Congress*, 137 F.3d at 1150), *cert. denied*, 527 U.S. 1003, 119 S.Ct. 2337, 144 L.Ed.2d 235 (1999). The Environmental Impact Statement then must include a reasonable discussion of strategies to mitigate these effects. *See* 40 C.F.R. § 1502.16(h).

In this case, the Postal Service concluded, with adequate support in the record, that the Project would not have a significant impact on the environment, wholly apart from the success of the mitigation strategies that were discussed. The Environmental Assessment recites:

> No mitigation for impacts on fish and wildlife is required for the two-year project due to the insignificance of all the impacts. However, the [Postal Service] has elected to implement a monitoring program on birds and fish in an attempt to gather additional information during the pilot program. In addition, the Hovercraft Committee may gather, investigate, and document reports of impacts on birds, fish or fishers.

In these circumstances, the tentativeness of some of the discussed mitigation measures does not cast doubt on the validity of the Environmental Assessment.

**C. Evaluation of Alternatives**

█ The Postal Service's regulations require it to "[s]tudy, develop, describe, and evaluate, at all decision points, reasonable alternatives to recommended actions which may have a significant effect on the environment." 39 C.F.R. § 775.8(a)(4). Plaintiffs contend that the Environmental

Assessment falls short of this standard in two respects: (1) the Environmental Assessment includes an inadequate evaluation of the "no-action" alternative; and (2) the Environmental Assessment fails to consider a reasonable range of alternatives.

The "no-action" alternative must receive some analysis. *See City of Tenakee Springs v. Clough,* 915 F.2d 1308, 1312 (9th Cir.1990). Although the Postal Service's discussion is brief, the Environmental Assessment adequately considers the "no-action" alternative. *See, e.g., Oregon Natural Resources Council v. Lyng,* 882 F.2d 1417, 1423 n. 5 (9th Cir.1989), *amended by* 899 F.2d 1565 (9th Cir.1990). The Environmental Assessment equates the "no-action" alternative with the status quo; that is, delivery of mail by fixed-wing aircraft. Plaintiffs argue that no meaningful consideration of the "no-action" alternative is possible without baseline studies determining the environmental effects of mail delivery via fixed-wing aircraft. Given the Project's objectives and the Postal Service's statutory obligation to deliver mail to these remote locations, however, we do not consider it arbitrary or capricious for the Environmental Assessment in its table of comparative environmental consequences to characterize the environmental effects of the "no-action" alternative as "no change."

We also conclude that the Environmental Assessment considers a reasonable range of alternatives given the objectives of the Project. The Postal Service seeks to improve the reliability and efficiency of mail delivery service to remote Alaskan villages. The Postal Service was not required to consider alternatives that would not serve this reasonable purpose. *See, e.g., City of Angoon v. Hodel,* 803 F.2d 1016, 1021 (9th Cir.1986) (per curiam) ("When the purpose is to accomplish one thing, it makes no sense to consider the alternative ways by which another thing might be achieved."); *Trout Unlimited v. Morton,* 509 F.2d 1276, 1286 (9th Cir.1974) ("The range of alternatives that must be considered need not extend beyond those

reasonably related to the purposes of the project."). Therefore, it was permissible for the Environmental Assessment to reject the use of alternate transportation modes such as trucks, boats, or fixed-wing aircraft. It was the inefficiencies of these traditional alternatives that gave rise to the need for the experimental hovercraft Project in the first place.

The Postal Service also considered discontinuing hovercraft operations during subsistence bird-hunting season. Because the Postal Service determined that the Project's effects on waterfowl would be insignificant, the Postal Service reasonably rejected the more costly "seasonal use" option. The Environmental Assessment nevertheless states that this option (or, indeed, the option of discontinuing the Project altogether) may be adopted if Project monitoring indicates that unexpected adverse environmental impacts occur. In all, we conclude that the range of alternatives analyzed in the Environmental Assessment is "sufficient to permit a reasoned choice." *Life of the Land v. Brinegar,* 485 F.2d 460, 472 (9th Cir. 1973).

Plaintiffs present no other substantial arguments that the Postal Service's Environmental Assessment exceeds agency discretion or fails to comply with governing law. We accordingly reject Plaintiffs' NEPA challenges.

## Conclusion

Because we find no violations of CZMA or NEPA, we affirm the district court's summary judgment in favor of the Postal Service.

AFFIRMED.